E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
J. JAMARI BUXTON (Cal. Bar No. 342364)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3519/3289
    Facsimile:  (213) 894-0141
    E-mail:  Jamari.Buxton@usdoj.gov
               Susan.Har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-540-SB |
|---|---|
| Plaintiff, | **GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT** |
| v. | |
| PAUL O. PARADIS, | |
| Defendant. | **[PUBLIC VERSION]** |
| | Hearing Date: June 27, 2023<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. Stanley Blumenfeld Jr. |

      Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys J. Jamari Buxton and Susan S. Har, hereby files its reply to defendant Paul O. Paradis' sentencing memorandum (Dkt. Nos. 43, 46) and objections to the Presentence Investigation Report (Dkt. Nos. 44, 45).

This reply memorandum is based upon the attached memorandum of points and authorities, the government's sentencing position, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 20, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

   /s/
J. JAMARI BUXTON
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                           PAGE

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT .......................................................................................................... 2

    A.  The Collective 16-Level Departure/Variance Recommended by the Government Fully Accounts for Defendant's Cooperation and His Extraordinary Acceptance of Responsibility ................................................. 2

    B.  Defendant Should Receive at Most a Modest Departure/Variance Based on His Physical Condition ................................................................. 5

    C.  Defendant Is Not Entitled to a Departure/Variance Based on His Mental Health Condition ........................................................................... 8

    D.  The Court Should Not Give Defendant a Reduced Sentence Based on His Educational/Professional Background and Privileged Socioeconomic Status .................................................................................. 8

    E.  Need to Avoid Unwarranted Sentencing Disparities ................................. 10

III. CONCLUSION ................................................................................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

While the government fully agrees that defendant Paul O. Paradis' extraordinary cooperation with the federal investigation and the related State Bar investigation merits a significantly reduced sentence—hence the government's recommended 16-level departure/variance—the massive <u>43-level</u> collective departure/variance that defendant seeks[1], and corresponding non-custodial sentence, is simply a bridge too far.  Contrary to defendant's assertion, defendant does not deserve a 22-level departure for his substantial assistance to the government or the State Bar, even if his cooperation was more extensive than that of Thomas Peters.  Nor, for that matter, should defendant receive double credit for extraordinary acceptance of responsibility or for telling the government about his own offense conduct, when (1) these were base requirements of defendant's cooperation plea agreement; and (2) core reasons that the government permitted defendant to plead to a single count of federal program bribery and made the generous sentencing recommendation it did.  Defendant likewise should not receive any variance based on his educational/professional background or privileged socioeconomic status, as doing so would unfairly reward defendant, a white-collar criminal, on the impermissible basis that he purportedly had more to lose than "other" types of criminals. ▇

▇

▇

▇

▇   For that, the Court should grant a modest departure/variance like the one recommended by the government, but certainly not one that produces a non-custodial

---

[1] As discussed herein, defendant seeks a 22-level departure/variance based on his cooperation with the government and the State Bar; he seeks a 3-level variance based on his extraordinary acceptance of responsibility; he seeks an 8-level departure/variance based on his physical condition; he seeks a 6-level departure/variance based on his mental health condition; and he seeks a 4-level variance based on his educational/professional background and his lack of contact with law enforcement.

sentence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## II. ARGUMENT

### A. The Collective 16-Level Departure/Variance Recommended by the Government Fully Accounts for Defendant's Cooperation and His Extraordinary Acceptance of Responsibility

Citing what he deems the "exponential difference" between the cooperation of Peters, for whom the government recommended a collective 7-level departure/variance, and defendant's cooperation with the government and the State Bar, defendant asks that the Court grant him a departure of <u>at least 22 levels</u> for his substantial assistance. (Dkt. No. 46[2] at 15.) The Court should reject that request.

In its sentencing memorandum, the government described in detail defendant's broad and impactful cooperation with the federal investigation, which it called "extraordinary" and deserving of a hefty 12-level departure under U.S.S.G. § 5K1.1. (Dkt. No. 47 at 10-13.) The government also detailed defendant's participation in the State Bar investigation and recommended an additional 4-level variance based on that and defendant's personal characteristics (<u>id.</u> at 16-18), resulting in a total recommended variance/departure of 16 levels, <u>more than doubling the government's recommendation for Peters</u>. While defendant's cooperation was no doubt more extensive, involved, and ultimately more important than Peters' cooperation, both in terms of the information defendant provided and the results it produced, it by no means warrants the non-custodial sentence that defendant seeks. <u>See</u>  <u>United States v. Martin</u>, 455 F.3d 1227, 1238 (11th Cir. 2006) ("Martin's cooperation, while commendable and extremely valuable, is not a get-out-of-jail-free card. Martin's cooperation does not wash the slate clean.") Importantly, the breadth of defendant's cooperation with the criminal and State

---

[2] Docket No. 46 is the unredacted version of defendant's sentencing position filed under seal. A redacted version of defendant's sentencing position was publicly filed at Docket No. 43.

Bar investigations cannot be divorced from the breathtaking and staggering scope of defendant's criminal conduct. Put simply, defendant's cooperation is extensive because his criminal activity was too. To give defendant a non-custodial sentence would be to disregard his years of brazen and outrageous criminal activity and credit <u>only</u> his cooperation. In fashioning its recommendation to the Court, the government fully considered and weighed defendant's cooperation (including in relation to Peters' cooperation), as well as defendant's offense conduct and the other § 3553(a) factors, and it fully stands by its recommendation. Defendant should not receive any credit beyond that for cooperating.

     Next, defendant seeks a further 3-level variance under U.S.S.G. § 3E1.1 for his "extraordinary acceptance of responsibility," noting that the government made a similar recommendation for David Wright. (Dkt. No. 46 at 14-15; Dkt. No. 45[3] at 12-14.) This Court previously rejected a similar argument by Peters, another cooperator. Critically, defendant ignores that – unlike in defendant's case – Wright did not have a cooperation plea agreement with the government, nor did the government move under Section 5K1.1 for a departure based on substantial assistance provided by Wright. Indeed, the government has <u>already credited</u> defendant's fulsome acceptance of responsibility, without which he would not have been eligible for a cooperation plea agreement. Through that plea agreement, defendant has had the opportunity to cooperate fully with both the federal government and the State Bar, and based on that cooperation, the government has recommended a collective 16-level departure/variance for defendant. Awarding defendant an <u>additional</u> departure/variance based on his "extraordinary acceptance of responsibility" would thus unjustifiably, and unfairly, grant defendant double credit.

---

[3] Docket No. 45 is the unredacted version of defendant's objections to the PSR filed under seal. A redacted version of defendant's sentencing position was publicly filed at Docket No. 44.

Defendant's request for yet another departure under U.S.S.G. § 5K2.16, which provides as a policy statement that a departure may be warranted if a defendant "voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense [where] such offense was unlikely to have been discovered otherwise," fails for the same reason. (Dkt. No. 46 at 15-16.) That is, under defendant's cooperation plea agreement to a single § 666 count, defendant was obligated to "respond truthfully and completely to all [government] questions" and to "[p]roduce voluntarily all documents, records, or other tangible evidence relating to matters about with the [government] . . . inquires." (See Dkt. No. 6 ¶ 3.) Accordingly, defendant has already received credit for providing fulsome information to the government. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Hence, defendant was not the only person who led the government to defendant's offense of conviction. Cf. Walker v. United States, No. 17-CR-113-JDP, 2020 WL 4925513, at *3 (W.D. Wis. Aug. 21, 2020) ("[Section] 5K2.16 authorizes a downward departure for disclosure of the offense for which the defendant is being charged.") As yet another basis to reject this requested departure, the provision does not apply "where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct." U.S.S.G. § 5K2.16. As explained in the government's sentencing memorandum, defendant chose to come forward in 2019 only after there had already been widespread reporting of defendant's role in the collusive litigation, which had its origins in early 2015.

1  In sum, the collective 16-level departure/variance the government recommended
2  fully accounts for defendant's substantial assistance to the government and the State Bar,
3  as well as for defendant's physical condition, which is addressed further below.
4  B. █████████████████████████████████
5  
6  ███████████████████████████
7  ████████████████████████████████
8  █████████████████████████████████
9  █████████████████████████████████
10 ██████████████████████████
11 █████████████████████████████████
12 ████████████████████████████████
13    ███████████████████████████████
14 █████████████████████████████████
15 ████████████████████████████████
16 ████████████████████████████████
17 █████████████████████████████████
18 ████████████████████████████████
19 ████████████████████████████████
20 ████████████████████████████████
21 ████████████████████████████████
22 █████████████████████████████████
23 ████████████████████████████████
24 █████████████████████████████████
25 ████████████████████████████████
26 █████████████████████████████████
27 ██████████████████████████████
28 ████████████████████████████████





C.

**D.  The Court Should Not Give Defendant a Reduced Sentence Based on His Educational/Professional Background and Privileged Socioeconomic Status**

Defendant argues that he deserves a 4-level downward variance based on his education/employment history, his recent personal hardship          , his loss of his

8

law license, and his lack of previous law enforcement contacts. (See Dkt. No. 46 at 18-20; Dkt. No. 45 at 10-12, 14-15.) Not so.

Contrary to his assertion, defendant's sentence should not improperly favor him based on his privileged socioeconomic status, education, or vocational skills. See 28 U.S.C. § 994(d) (requiring sentencing guidelines to be "entirely neutral as to ... socioeconomic status of offenders); U.S.S.G. §§ 5H1.2 ("[e]ducation and vocational skills are not ordinarily relevant in determining whether a departure is warranted"); 5H1.5 ("[e]mployment record is not ordinarily relevant in determining whether a departure is warranted"); 5H1.10 (socio-economic status is "not relevant in the determination of a sentence"); see United States v. Prosperi, 686 F.3d 32, 47 (1st Cir. 2012) ("[I]t is impermissible for a court to impose a lighter sentence on white-collar defendants than on blue-collar defendants because it reasons that white-collar offenders suffer greater reputational harm or have more to lose by conviction."); United States v. Bistline, 665 F.3d 758, 765 (6th Cir. 2012) (disapproving of district court's "recitation of [defendant's] collateral consequences" which did nothing to show that the sentence "reflects the seriousness of his offense"; "Were it otherwise, these sorts of consequences—particularly ones related to a defendant's humiliation before his community, neighbors, and friends—would tend to support shorter sentences in cases with defendants from privileged backgrounds, who might have more to lose along these lines. And '[w]e do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose.'" (citation omitted)). In this case, defendant's fall from grace reputationally, ▇▇▇▇▇▇▇▇▇▇▇▇ and related financial woes, and his loss of his law license are all consequences of his own, years-long criminal and unethical actions, and they occurred because of the many privileges defendant had to begin with. A departure based on these self-inflicted factors would unfairly reward

defendant on the faulty logic that he had more to lose than others, thereby diminishing the seriousness of the defendant's offense.[7]

The fact that defendant has no prior law enforcement contacts also does not warrant a separate departure/variance. (See Dkt. No. 46 at 19.) Rather, defendant's zero criminal history points and resulting criminal history category of I, which reduces defendant's Guidelines range, already takes this factor into consideration and rewards defendant for his previous law-abiding history.

### E. Need to Avoid Unwarranted Sentencing Disparities

Finally, defendant contends that a non-custodial sentence would avoid unwarranted sentencing disparities, arguing, in particular, that he is "as much or more deserving of . . . departures/variances given to other defendants" based on his "unmatched truthfulness and cooperation." (Dkt. No. 46 at 20; see Dkt. No. 45 at 15-16.) But as the government explained in its sentencing memorandum, defendant is in a category of his own. (Dkt. No. 47 at 20-21.) Because while it is true that defendant's cooperation with the government was more extensive and impactful than that of Peters, he is by far the most culpable defendant of anyone the government has prosecuted in this case, and it is likely that the government would not have had to spend years and countless resources investigating this matter if not for defendant. For these reasons, defendant's cooperation cannot fairly be compared to that provided by Peters, Alexander, or Wright. The disparity between this defendant's custodial sentence and Peters' non-custodial one would be amply warranted and justified, in view of defendant's far more egregious and longstanding criminal conduct.

---

[7] Notably, defendant's pedigree and career successes did not stop or dissuade him from engaging in widespread unlawful conduct. If anything, defendant's educational background, professional training, and accomplishments helped facilitate his crimes, making defendant both (a) a less-suspicious bad actor, and (b) better able to pull-off the crimes, which required significant legal and professional training and skills.

10

## III. CONCLUSION

For the foregoing reasons, the government's recommended collective departure/variance of 16 levels and recommended sentence of (1) 18 months' imprisonment, (2) a three-year term of supervised release, and (3) a special assessment of $100 remains sound, and defendant presents no valid basis for the Court to issue a non-custodial sentence.