E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
J. JAMARI BUXTON (Cal. Bar No. 342364)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-3519/3289
    Facsimile:   (213) 894-0141
    E-mail:      Jamari.Buxton@usdoj.gov
                     Susan.Har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL O. PARADIS,<br><br>    Defendant. | No. CR 21-540-SB<br><br>VICTIM IMPACT STATEMENT OF LADWP<br><br>**[PUBLIC VERSION]**<br><br>Hearing Date:  June 27, 2023<br>Hearing Time:  8:00 a.m.<br>Location:  Courtroom of the Hon. Stanley Blumenfeld Jr. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys J. Jamari Buxton and Susan S. Har, hereby files the Los Angeles Department of Water and Power's ("LADWP") Victim Impact Statement In Regard to Defendant Paul Oliva Paradis, which the government received from counsel for LADWP on June 20, 2023.

//

//

The government will file the unredacted version of the Victim Impact Statement under seal.

Dated: June 21, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/
J. JAMARI BUXTON
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA



@paulhastings.com

June 20, 2023

The Honorable Stanley Blumenfeld, Jr.
United States District Court for the Central District of California
350 West 1st Street, Courtroom 6C
Los Angeles, California 90012-4565

      RE:  Victim Impact Statement In Regard to Defendant Paul Oliva Paradis ("Paradis")

Dear Judge Blumenfeld:

      The Los Angeles Department of Water and Power ("LADWP" or "Department")[1] is compelled to submit this victim impact statement on behalf of its customers and ratepayers to respond to the insufficient recommended sentencing in this matter.  The Department believes it necessary, just, and appropriate to sentence Paradis to the longest possible period of incarceration in light of the havoc he wreaked at LADWP for over four years, the tens of millions of dollars he stole from Los Angeles ratepayers, and his patent lack of real remorse for the full scope of the harm he caused in Los Angeles.

      Paradis admits that he breached his duties as a lawyer by the sham lawsuit, but does not truly take responsibility for that misconduct.  Nor does he take responsibility for the four years he spent manipulating, undermining, and structuring corrupt schemes to misappropriate money from the public for his personal pecuniary gain.  Both Paradis' memorandum and the Government's sentencing memorandum gloss over the fact that Paradis orchestrated a scheme to obtain, through corruption, fraud, and lies, **nearly *$50 million* in public funds** from the Department and the City, consisting of the following:

1. **$19 million** in legal fees paid to the lawyers supposedly representing the plaintiffs in the sham lawsuit, **of which $2.175 million was paid as an undisclosed kickback to Paradis** by those lawyers;

2. **$6.03 million** paid to the Paradis Law Group for supposed "monitoring" services; and

3. **$23.45 million paid to Aventador ($22.05 million) and Ardent ($1.4 million),** 2 companies controlled by Paradis, for little to no actual work.

Paradis has not returned a single dime of the nearly $50 million he cost the City or of the $31.655 paid to him and his controlled entities in a series of schemes.  Under the guise of "monitoring," Paradis firmly embedded himself within the Department to set up his schemes for misappropriating public funds, improper conduct far beyond the collusive litigation for which he now claims remorse.

      Only when Paradis realized that he would be caught red-handed defrauding the judicial system, did he decide to try to save himself by working with the FBI.  Paradis admits as much: "*Immediately upon*

---

[1] The City of Los Angeles' (the "City") LADWP is a proprietary department of the City and the largest municipal utility in the United States.  It serves approximately 4 million residents and 1.4 million customers.



The Honorable Stanley Blumenfeld, Jr.
June 20, 2023
Page 2

*the potential unraveling* of the collusive litigation scheme, Mr. Paradis requested a meeting with the U.S. Attorney's Office . . . and FBI." Paradis Memo at 9 (emphasis added). Indeed, Paradis' "assistance" is little more than helping to unravel the *schemes he put in place*—yet another apparent attempt to manipulate our public institutions for his own benefit. This Court should not be fooled and should impose the maximum sentence available. Imposing the bare minimum sentence requested by the Government sends an unfortunate message that a defendant can get away with massive public fraud by the expediency of turning state's witness when caught.

   The <u>full</u> scope of Paradis' ***calculated and repeated misconduct over a four-year period*** is widespread and multi-faceted. In short:

- <u>Collusive Lawsuit.</u>  This is the only crime addressed by Paradis in his sentencing memorandum. Paradis admits he manipulated the courts and breached his professional obligations to the City and LADWP by orchestrating a sham suit against the City (the "Jones Class Action"), secretly representing the plaintiff in the Jones Class Action while at the same time coordinating the settlement response efforts for the City. Paradis received $2.175 million personally as a kickback for 20% of the fees paid to plaintiffs' lead counsel in the collusive lawsuit. Instead of truly accepting responsibility for his actions, Paradis claims he acted at the "direction" of ▮▮▮▮ of the City Attorney's Office. Paradis Memo at 7-8. Whether ▮▮▮▮ or anyone else communicated or colluded with Paradis, the fact is that Paradis himself personally represented both sides of a sham lawsuit, and was the lynchpin without whom the collusive lawsuit could not have occurred. At a minimum, Paradis should be ordered to disgorge, and provide restitution to the Department for, the kickback paid to him personally in the amount of $2.175 million.

- <u>Strawman Court Monitor/Fraudulent Remediation and Cybersecurity "Work."</u>  Paradis brought in ▮▮▮▮▮▮ as a court monitor in the Jones Class Action and together they schemed to misappropriate more money for themselves. Paradis ghost-wrote ▮▮▮▮▮ reports, manufacturing urgency and problems to ensure he and ▮▮▮▮ would continue to extract money from LADWP. Paradis wove a false narrative that LADWP's billing system[2] and IT issues could not be resolved without his costly management and then bilked the Department to "fix" the urgencies and issues he manufactured. To this day, it is unclear what Paradis did, if anything, other than attend meetings, berate people, and charge LADWP and its customers millions of dollars for this "work." Paradis takes no responsibility for this fraud and manipulation. His deception as an Officer of the Court was elaborate, all-encompassing, deliberate, and resulted in the Department paying Paradis and his entities $29.48 million. Paradis never returned a dime of these public funds. Instead of truly accepting responsibility, Paradis omits these facts altogether from his sentencing memorandum. At a minimum, Paradis should be ordered to disgorge and provide restitution to the Department for these fraudulently and corruptly obtained payments in the amount of $29.48 million.

   Paradis shows no remorse for this conduct. Even his claimed remorse over the sham lawsuit is betrayed by his actions. Paradis continues his fraudulent conduct, regularly casts blame on everyone else, and is actively working to avoid restitution. Among other conduct:

---

[2] In September 2013, LADWP attempted to launch a new billing system. LADWP retained PricewaterhouseCoopers, LLP ("PWC") to implement this new system. The system launch went poorly.



The Honorable Stanley Blumenfeld, Jr.
June 20, 2023
Page 3

- Paradis lied to the New York state court by submitting an affidavit asking the court to accept his non-disciplinary resignation from the New York Bar due to medical reasons, while purposely omitting from the affidavit his then impending plea agreement with the U.S. Attorney's Office for the Central District of California (the "USAO"). The court saw through Paradis' lies and disbarred him. Paradis makes no mention of this fraud in his sentencing memorandum.

- Paradis initiated bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Arizona.[3] There he continues to engage in litigation tactics designed to delay and frustrate the City's attempts to recover stolen public money, in an attempt to minimize and excuse his part in the fraud.[4]

Paradis' fraud and manipulations have caused immeasurable harm and garnered Paradis millions. Others with little or no personal benefit from Paradis' schemes are serving up to six years. Paradis should serve the longest possible sentence and should be ordered to provide restitution at least of the $31.655 million in public funds that he and his controlled entities pocketed. This Court should send a clear message that public fraud, corruption, and institutional harm will not provide any advantage to the participants and will not be tolerated in our criminal justice system.

I.  **PARADIS CORRUPTED THE JUDICIAL PROCESS BY SIMULTANEOUSLY REPRESENTING THE CITY/LADWP AND THE CLASS REPRESENTATIVE SUING THE CITY/LADWP, IN COMPLETE DISREGARD OF THE MOST BASIC ETHICAL DUTIES OF A LAWYER.**

Paradis was formally retained as counsel to represent the City in *City v. PWC*. But, Paradis—a long-time class action lawyer—saw opportunities to enrich himself on the back of the billing debacle beyond that role. Paradis decided he could be on both sides of the class actions. He personally drafted the Jones Class Action complaint based on information he obtained as counsel for the City against PWC and fed it to one of his henchman— ▇▇▇▇▇▇▇ to act as plaintiff's counsel. Unbeknownst to everyone at DWP, Paradis entered into an agreement with ▇▇▇▇▇▇ by which Paradis would receive twenty percent of any attorney's fees ▇▇▇▇▇ recovered.[5] All of these arrangements were totally unethical and illegal.[6]

When ▇▇▇▇▇▇ filed a declaration demanding $19 million in attorney's fees, Paradis supported that bid, without disclosing that he had a 20% interest in the portion of the fee award paid to ▇▇▇▇▇▇▇▇▇▇▇ falsely submitted a declaration of the work he had purportedly done (likely

---

[3] *In re Paradis*, Case No.: 2:20-bk-06724-PS (Br. D. Az.).

[4] As elaborated below, Ardent Cyber Solutions, LLC, a cybersecurity company affiliated with Paradis also filed for bankruptcy and adopted the same scorched-earth tactics. *See In re Ardent Cyber Solutions, LLC*, Case No. 2-20-bk-06722 PS (Bankr. D. Ariz.).

[5] The settlement itself paid back customers 100 cents on the dollar and has been reviewed and affirmed by subsequent counsel and the court to be fair, reasonable, and adequate.

[6] Indeed, when a former employee of Paul Kiesel's law firm threatened to expose Paradis' corrupt conduct unless she was paid off, Paradis brokered an agreement to ensure she was paid to keep quiet.



The Honorable Stanley Blumenfeld, Jr.
June 20, 2023
Page 4

written by Paradis) and Paradis knew it was all a hoax. To the extent any work was done against the City/LADWP, it was done by Paradis—while he purported to be working for LADWP. With the court none the wiser, the City paid $19 million in attorney's fees, of which Paradis personally pocketed $2.175 million.[7]

## II.    PARADIS CORRUPTED AND EMBEDDED HIMSELF IN LADWP.

Beyond the legal work, Paradis saw opportunities for even more money. He convinced LADWP's General Manager to give Paradis a $6 million dollar contract to oversee the remediation of the billing system—to "help" with the class action settlement. Paradis had the Department bring in ▇▇▇▇ to serve as a supposedly independent court monitor. Paradis pushed for ▇▇▇▇ appointment as the monitor because he knew ▇▇▇▇ would be a malleable foil for the continuing collusion and corruption to expand Paradis' role and ability to charge fees to LADWP. Paradis wined and dined ▇▇▇▇ and took him to popular sporting events and Paradis drafted each of ▇▇▇▇ reports to the court. Through ▇▇▇▇ Paradis created false narratives of fear and urgency to position himself as the unique savior to remediate the billing system. LADWP paid Paradis over $6 million for this supposed remediation activity, when in fact others in the department and at Oracle actually led and completed the work.

### A.    Paradis expanded his reach within LADWP by approaching, priming, and corrupting LADWP's general manager.

While purporting to "manage" the remediation of LADWP's billing system, Paradis further expanded his role and influence at LADWP by grooming a personal relationship with LADWP's general manager David Wright. Paradis invited Wright on personal trips, concerts, and other events. Paradis further treated Wright to meals at fancy restaurants. Paradis praised Wright's work at LADWP and his leadership. Paradis became Wright's confidante in both personal and professional matters. Wright, clearly corrupt, accepted a bribe from Paradis, committed crimes and violated the public trust, and for that he has been duly sentenced. There is no excuse for Wright's conduct, but there also should be no excuse for Paradis, who was critical to corrupting and grooming Wright. Paradis, like Wright, should also be held accountable for the harm that he and Wright caused the Department and its customers and ratepayers.

### B.    Paradis used cybersecurity to con LADWP out of even more funds

Key to Paradis' scheme to "oversee" the billing system remediation was his campaign to undermine the IT professionals in the Department—only he could oversee the remediation work. Paradis realized he could turn this IT concern to even more lucrative ventures. Paradis drafted letters and prepared presentations for Wright, turning billing system concerns into urgent cybersecurity problems resolvable only by hiring an outside vendor and touting his own "new" company—Aventador—as that vendor. In May/June 2017, Paradis armed Wright with false talking points and a presentation to make the

---

[7] Aware of their criminality, Paradis and ▇▇▇▇ conspired to transfer and hide the $2.175 million by creating two separate shell companies. Paradis created S.M.A. Property Holdings, LLC to receive the defrauded money. ▇▇▇▇ created Tarten Investments, Inc. to transfer the defrauded money.



The Honorable Stanley Blumenfeld, Jr.
June 20, 2023
Page 5

case for Paradis' company to obtain a $30 million contract for supposed cybersecurity services without competitive bidding and on a sole source basis.[8]

Aventador was a Paradis' most audacious fraud. The company had just been formed, had a residential address at Paradis' condo in Santa Monica, and initially had no employees. The head of LADWP's purchasing team raised objections to the contract, while IT employees sent emails and filed ethics complaints. But, Paradis' bribery of and corrupt influence over Wright and a then senior IT executive for the Department, David Alexander, prevailed, and Aventador obtained a $30 million cybersecurity agreement. Aventador billed LADWP for and was paid millions of dollars with no back-up for the invoices and no work to show for the fees. Deep in Paradis' pocket, David Wright personally signed off on these invoices for payment. In terms of monetary harm, Paradis cost LADWP and its customers and ratepayers nearly $50 million, of which he and his controlled entities pocketed $23.4 million for supposed cybersecurity services.

### III.   PARADIS' "COOPERATION" WITH THE GOVERNMENT IS BUT A POORLY DISGUISED ATTEMPT TO AVOID JUSTICE AND SHOULD BE GIVEN MINIMAL, IF ANY, CREDIT

Ever the opportunist, Paradis attempts to make much of his "cooperation" with the FBI. *See, e.g.*, Paradis Memo at 9. But, his cooperation was not based on any commitment to "truth" and "acceptance of responsibility" as he proclaims in his sentencing memo. *Id*. Plainly, Paradis had to cooperate because his schemes had been uncovered. Paradis admits this: "*Immediately upon the potential unraveling* of the collusive litigation scheme, Mr. Paradis requested a meeting with the U.S. Attorney's Office . . . and FBI." Paradis Memo at 9 (emphasis added). Paradis had been caught red-handed and he knew what had to be his next con.

On March 4, 2019, the court in *City v. PWC* and the Jones Class Action had figured out that Paradis was working on both sides of the litigation. The judge ordered the City to cease any and all payments to Paradis and his companies. The court also ordered Paradis to report to his deposition in the case set two days later on March 6, 2019. It was only a matter of time before everything was revealed—with or without Paradis' cooperation. Following the court's order, LADWP informed Paradis that it was terminating its contract with his company Aventador on March 14, 2019—the very same day Paradis began working with the Government.

Paradis makes much of his "unprecedented" work while undercover, but it can only be described as such because of the extent of the corruption and misconduct he inflicted upon LADWP and its customers—all to his personal monetary benefit. Other participants in this massive fraud who have been sentenced in connection with Paradis' schemes, such as former general manager David Wright and former senior IT executive, David Alexander, did not actually receive any monetary benefits, yet were sentenced to six and four years of incarceration respectively. Given the central organizing role Paradis

---

[8] Separately, Paradis schemed with Wright in May 2018 to create a cybersecurity company that would provide cybersecurity training to LADWP employees. Paradis and Wright agreed that Paradis would provide capital for a controlling interest and that Wright would have an ownership interest in the company. In exchange, Wright agreed once again to use his position as LADWP general manager to convince the LADWP Board to support and vote to approve the cybersecurity training of LADWP employees by Paradis and Wright's new company. Paradis and Wright valued the training at $15 million over a five-year period. Fortunately, this scheme did not come to fruition.



The Honorable Stanley Blumenfeld, Jr.
June 20, 2023
Page 6

played, sentencing Paradis at the lowermost limit of the 18-24 month sentencing guideline is unjust. Paradis' primary distinction from the other defendants is that he hastened the unraveling of *his own schemes from which he personally obtained millions of dollars*. A court should "impose a sentence sufficient . . . to comply with the purposes" of sentencing, which include, among other aims, specific and general deterrence. 18 U.S.C. §3553(a)(1-7). Granting cooperation credit to a defendant who jumped ship as it was sinking, and who was the principal financial beneficiary of the fraud and corruption, deters nothing.

**IV.    PARADIS CONTINUES TO TRY TO AVOID THE CONSEQUENCES OF HIS CRIMINAL CONDUCT.**

Paradis wants this court to believe that he has changed his ways but this is belied by his actions. Paradis' ongoing conduct makes clear that he continues to traffic in fraud and manipulation.

   A.    Paradis lied to the New York state court.

Consistent with his prior criminal conduct, Paradis fails to recognize what candor in the judicial process means and requires. Eleven days before he signed his plea agreement with the USAO, Paradis filed an affidavit asking the New York state court to accept his non-disciplinary resignation, citing medical reasons complicating his ability to practice law. Notably, Paradis stated that since his admission to the New York State Bar, he had never "been arrested, charged with, indicted, convicted, tried, and/or entered a plea of guilty . . . ." And, even after signing his plea agreement, Paradis still failed to acknowledge before that court his criminal status but instead sought to amend his original application to seek an order granting a medical disability suspension. Fortunately, the Attorney Grievance Committee of the New York State Bar and the New York state court saw through Paradis' lies. The New York state court disbarred him.[9]

   B.    Paradis initiated bankruptcy proceedings to escape returning as restitution the money he unlawfully obtained.

To date, Paradis has not returned a single penny of the tens of millions of dollars he defrauded the City and LADWP into paying him. Instead, on June 3, 2020, Paradis filed for bankruptcy in the U.S. Bankruptcy Court for the District of Arizona.[10] On June 24, 2021, the City filed an adversary complaint naming Paradis as a defendant, seeking to recover the public funds Paradis had fraudulently obtained.[11] More than two years have passed since the bankruptcy proceedings have started, and in the adversary proceeding initiated by the City, Paradis has refused to engage with the very facts he has expressly admitted to in signing his plea agreement with the USAO. Instead, he continues to delay and obfuscate,

---

[9] *Matter of Paradis*, 205 A.D.3d 88, 89, 165 N.Y.S.3d 545 (2022).

[10] *In re Paradis*, No. 2:20-bk-06724-PS (Bankr. D. Ariz.). Relatedly, Ardent also filed for bankruptcy in the same court on the same day. *In re Ardent Cyber Solutions, LLC*, Case No. 2-20-bk-06722 PS (Bankr. D. Ariz.). Notwithstanding the fact that LADWP paid Ardent millions of dollars, according to the Chapter 7 Trustee's Report of No Distribution, there was "no property available for distribution from the estate . . . ." That case is now closed.

[11] *City of Los Angeles v. Paradis*, Adv. No. 2:21-ap-00171-PS (Bankr. D. Ariz.).



denying the City/LADWP any restitution. Paradis' conduct in the bankruptcy proceeding cuts against any possible sentencing reduction he may be afforded. *C.f.* U.S.S.G. §3E1.1, Application Note 1(C),(E) (listing "voluntary payment of restitution prior to adjudication of guilt" and "voluntary assistance to authorities in recovery of the fruits . . . of the offense" as consideration for sentence reduction).

No amount of finger pointing changes the fact that Paradis acted criminally; he admitted to acting criminally; and he initiated bankruptcy proceedings to prevent the City from recovering the public money he misappropriated for himself through criminal conduct. Paradis' actions since signing his plea agreement with the USAO show his true colors: he continues to commit fraud and is fighting tooth and nail to prevent recovery of defrauded money. Paradis is not remorseful. *See U.S. v. Lindholm*, 24 F.3d 1078, 1087 (9th Cir. 1994) (denying defendant two-point reduction of offense level for "accepting responsibility" of crimes because defendant later attempted to blame victims he defrauded). *C.f.* U.S.S.G. §3E1.1, Application Note 1(C),(E).

## V. CONCLUSION

Paradis betrayed the public trust and manipulated numerous individuals for his personal gain. Others have and will be held to account for their actions, and so should Paradis. The two employees who were bribed with promises of future employment to help Paradis in his scheme were sentenced to 4 and 6 years respectively. It is only fitting and just that Paradis, who was the recipient of nearly all of the financial benefits in the scheme be sentenced to at least 2 years (and to whatever additional time is possible for his crimes) and that he be ordered to disgorge and make restitution of the pecuniary benefits he and his shell companies received in the amount of $31.655 million.

Respectfully,

Tamerlin J. Godley
of PAUL HASTINGS LLP