David C. Scheper, Esq. (SBN 120174)
dscheper@winston.com
Jeffrey Steinfeld, Esq. (SBN 294848)
jlsteinfeld@winston.com
**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Attorneys for Defendant Paul O. Paradis

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL O. PARADIS,<br><br>Defendant. | Case No. 2:21-cr-00540-SB<br><br>Hon. Stanley Blumenfeld, Jr.<br>Courtroom 6C<br><br>Action Filed:   November 29, 2021<br>Sentencing Date:  June 27, 2023<br>Hearing Time:   8:00 a.m.<br><br>**DECLARATION OF PAUL PARADIS IN RESPONSE TO LOS ANGELES DEPARTMENT OF WATER AND POWER'S VICTIM IMPACT STATEMENT**<br><br>**(PARTIALLY FILED UNDER SEAL)(PARTIALLY REDACTED)** |

I, Paul O. Paradis, declare under penalty of perjury under the laws of the United States as follows:

1. I am over the age of 18 and have personal knowledge of the facts set forth herein and could and would competently testify thereto if called upon to do so.

2. On June 21, 2023, the Los Angeles Department of Water and Power ("LADWP") caused the seven-page Victim Impact Statement annexed as Exhibit 1 hereto ("*LADWP Victim Impact Statement*) to be filed with the Court in this criminal matter.

3. After reviewing the *LADWP Victim Impact Statement*, I have determined that the document is materially false and misleading because it omits numerous material facts necessary to make the statements made therein true and accurate, and contains numerous materially false representations, as detailed below.

4. The *LADWP Victim Impact Statement* plainly admits that the LADWP caused this document to be filed with the Court for the purpose of influencing this Court's sentencing decision in this case. *See* Exhibit 1, *passim*.

5. I respectfully submit this declaration to provide the Court with the true facts concerning several of the false and misleading statements contained in the *LADWP's Victim Impact Statement*. I realize that the Court has been inundated with voluminous sentencing materials, but I believe that I cannot be sentenced fairly without the Court having access to truthful information omitted by the LADWP.

**This Court Has Previously Recognized That An Individual "Puts Himself At Some Risk" By Testifying Against People In High-Profile Positions In The City of Los Angeles**

6. On May 9, 2023, this Court conducted the sentencing hearing in *USA v. Peters*, Case No. CR 22-00009 SB. During that hearing, the Court observed that, "***Mr. Peters . . . also put himself at some risk . . . in terms of being willing to testify against some people in high-profile positions in the City of Los Angeles***." *See* May 9, 2023 Peters Sentencing Tr. at 7:19-24. (Emphasis added).

**By Cooperating With The Government, State Bar and *Bradshaw* Class Counsel Against Several High-Profile Current and Former Los Angeles City Officials, Mr. Paradis Has Put Himself At Risk**

7. The record before the Court details, among other things, my participation in almost 200 undercover operations and at least 12 proffer sessions that yielded a great deal of actionable intelligence and evidence that was used to charge and convict three former high ranking Los Angeles City Officials and to investigate numerous others. *See* Paradis Sentencing Memo Exhibit A, *passim*.

8. The record before the Court also details, among other things, how I have cooperated with – and continue to cooperate with – the State Bar and how, to date, my cooperation has resulted in the State Bar opening ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ attorneys. *See* Paradis Sentencing Memo Exhibit B, *passim*.

9. Included among the ▆ attorneys currently under State Bar investigation as a result of ▆▆▆▆ with the Office of Chief Trial Counsel ("OCTC") are: (i) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆; (ii) ▆▆▆▆▆▆▆▆▆▆▆; and (iii) ▆▆▆▆▆▆▆▆▆▆▆▆.

10. On or about January 21, 2022, I received a letter from the State Bar informing me that OCTC had opened a formal investigation into attorney misconduct involving attorney ▆▆▆▆▆▆▆ and had assigned that investigation Case No. ▆▆▆▆.

11. On May 2, 2022, my criminal counsel received a phone call from an attorney representing Mr. Levine. During this phone call, the attorney issued a warning to my criminal counsel that, "***Paul Paradis is publicly taking shots at Mel, which leads to things like ridiculous LA Times stories that Mel can't defend himself against . . . . Paul is clearly trying to shift blame to Mel and others, and if Paul doesn't cut it out, [we] may submit something at Paul's sentencing arguing that he is showing zero acceptance of responsibility by trying to shift blame to Mel***." (Emphasis added).

12. Following the attorney's warning to my criminal counsel, I continued to cooperate with the government and State Bar and was undeterred by Mr. Levine's threat.

13. On or about August 29, 2022, I received a letter from the State Bar informing me that OCTC had opened a formal investigation into attorney misconduct involving attorney and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and had assigned that investigation Case No. ▆▆▆▆.

-3-

14. On or about May 4, 2023, I received a letter from the State Bar informing me that OCTC had opened a formal investigation into attorney misconduct involving attorney ▮▮▮▮▮▮▮▮ and had assigned that investigation Case No. ▮▮▮▮▮▮.

**The LADWP Board of Commissioners
Makes Good On Mr. Levine's Threat and
Files A Victim Impact Statement That
Falsely Portrays The LADWP As A "Victim"**

15. On June 20, 2023, the LADWP Board of Commissioners made good on Mr. Levine's threat and caused the LADWP to file the materially false and misleading *LADWP Victim Impact Statement* annexed as Exhibit 1.

16. Notably, the *LADWP Victim Impact Statement* was not signed or sworn to by *any* member of the five (5) member LADWP Board of Commissioners, nor was it written on official LADWP letterhead. Rather, the false and misleading *LADWP Victim Impact Statement* was submitted, *unsworn*, by counsel at Paul Hastings LLP, the firm that serves as outside counsel to the LADWP Board of Commissioners in matters relating to the Government's criminal investigation.

**The LADWP Victim Impact
Statement Omits
Numerous Material Facts**

17. Respectfully, I believe that the materially false *LADWP Victim Impact Statement* filed with this Court amounts to a fraud on the Court and constitutes another intentional action taken by LADWP Commission President McClain-Hill in furtherance of the ongoing cover-up that then City Attorney Michael Feuer began in the March/April 2019 time period. At that time, the City Attorney's Office made false public statements to the effect that attorney Paul Kiesel and I had been "rogue actors" who had implemented the collusive litigation scheme in the *Jones v. City* class action without the knowledge or involvement of any City Attorney personnel.

18. I have admitted – and continue to admit – my role and wrongful conduct involving the collusive litigation scheme and related matters. In connection with my ongoing cooperation, I have revealed to the Government, State Bar and *Bradshaw* Class Counsel that ▇▇▇▇ and I were not "rogue actors," but rather worked closely with numerous City Attorney personnel, LADWP personnel and outside counsel in executing the collusive litigation scheme.

19. As a result of my cooperation with the OCTC, I am informed that the State Bar is actively investigating ▇▇:

    a. a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and

    b. the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

20. The LADWP's Victim Impact Statement's fundamental fraud is its omission of the material fact that ***the City and the LADWP were, in fact, the intended beneficiaries – not the victims*** – of the collusive litigation scheme.

21. By falsely portraying the LADWP as a "victim" in the *Jones* Action despite both the Government and Special Master Edward Robbins now having determined that the City, acting by and through and aided by numerous City Attorney personnel, LADWP personnel and numerous outside counsel, architected, authorized and directed the collusive litigation scheme, the LADWP has acted to conceal material facts from this Court for the purpose of deceiving and misleading this Court. *See* Paradis Sentencing Memorandum Exhibit A, *passim* and Exhibit B, *passim*.

**The LADWP Victim Impact Statement Contains Numerous Materially False Statements**

22. In addition to omitting the aforementioned material facts to the Court, the LADWP, acting by and through its Board of Commissioners and outside counsel, Paul Hastings LLP, has further deceived this Court by making the following materially false representations to the Court.

23. The LADWP's Victim Impact Statement states in relevant part, "***Aventador was Paradis' most audacious fraud***" and "***Paradis used cybersecurity to con LADWP out of even more funds***." *See* Exhibit 1 at p. 4. (Emphasis added).

24. These statements were known by the LADWP and LADWP Commission President McClain-Hill to be materially false at the time she authorized the *LADWP Victim Impact Statement* to be filed with this Court because **LADWP Commission President McClain-Hill has long had actual knowledge of the extreme lack of cybersecurity and long-running fraud perpetrated by LADWP and City officials on federal and state regulators concerning the lack of cybersecurity at the LADWP**.

25. While the LADWP's Victim Impact Statement assails Aventador as "Paradis' most audacious fraud," the LADWP failed to inform the Court that, during the April 23, 2019 LADWP Board meeting, then Commission President Levine publicly stated, "***there were never any questions raised about the capabilities of the employees of [Aventador] … they are highly regarded cybersecurity experts and everything we know about them, which is a lot, is that they are highly qualified***." *See* https://ladwp.granicus.com/MediaPlayer.php?view_id=2&clip_id=1462 at 2:02:13 - 2:02:35.

26. Commission President Levine's statement concerning the qualifications of the cybersecurity experts employed by Aventador was accurate. At its peak, Aventador had more than 40 highly qualified employees working on-site at the LADWP and these employees performed a large number of cybersecurity-related tasks that significantly improved the LADWP's cybersecurity hygiene and security posture, including halting a cyber attack on LADWP systems that LADWP personnel tried, but were unsuccessful, in stopping themselves.

27. I was never informed by any LADWP or City personnel of any complaint concerning the quality of the services provided by Aventador personnel. To the contrary, I frequently received compliments and was often thanked for having assembled and provided the LADWP with a group of cybersecurity experts drawn from, among others, the National Security Agency ("NSA") and Department of Energy ("DOE").

28. A September 28, 2018 email from LADWP's then Chief Information Officer ("CIO"), Louis Carr, to then General Manager David Wright confirms the positive comments that were later made by LADWP Commission President Levine and states in relevant part, "**Thank you for engaging with Aventador to assist us. It has been very eyeopening [sic] to me and my staff**." *See* Exhibit 2 annexed. (Emphasis added).

29. During numerous proffer sessions, I met with the Government's original trial team including the FBI (hereinafter collectively the "Government's Original Trial Team") and an additional number of Assistant United States Attorneys responsible for prosecuting ▓▓▓▓▓▓. During these meetings, I provided extensive information and documentary and electronic evidence demonstrating the existence of ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and which were later confirmed by the Aventador team.

30. A great deal of the information I provided to the Government's Original Trial Team and ▓▓▓▓▓▓ prosecutors was later confirmed to be accurate ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

31. In addition, during an October 5, 2021 telephone conference between the Government's Original Trial Team and my criminal counsel, my criminal counsel informed the Government that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓: (i) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; (ii) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (iii) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓.

32. Commissioner Levine's and Commissioner McClain-Hill's knowledge of the extreme lack of cybersecurity and long-running fraud perpetrated by LADWP and City officials on federal and state regulators concerning the lack of cybersecurity at the LADWP was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:



See ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ annexed hereto. (Emphasis added).

33. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:

\*   \*   \*

See ▮▮▮▮▮. (Emphasis added).

34. The foregoing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

35. The falsity of the LADWP's statement that "Paradis used cybersecurity to con LADWP out of even more funds" is further demonstrated ▮▮▮▮▮▮▮▮▮▮:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

\* \* \*



\* \* \*

See [REDACTED]. (Emphasis in original and added).

36.  In addition, the *LADWP's Victim Impact Statement* also omits material facts and contains false statements concerning the Court-appointed Independent Monitor in the *Jones* Action, Mr. Paul Bender ("Bender").

37.  First, while the *LADWP's Victim Impact Statement* accuses Mr. Bender of having "*schemed to misappropriate more money for [himself]*," the LADWP fails to inform the Court that Mr. Bender remained in his role and continued to serve as the Independent Monitor appointed by Judge Berle until September 2020 – *more than 18 months after the Government had commenced its criminal investigation*. Perhaps even more significantly, Mr. Bender continued to serve in this role at the express request and with the express approval of replacement Class Counsel, Brian Kabateck.

38. Second, the *LADWP's Victim Impact Statement* falsely states that "***Paradis brought in Paul Bender as a court monitor in the Jones Class Action* . . .**" *See* Exhibit 1 at p. 2. (Emphasis added).

39. This statement is demonstrably false. Special Master Edward Robbins confirms this in Appendix I to the July 13, 2021 *Special Master's Final Report of Investigation* (the "Special Master's Report"), stating "***the hiring of Mr. Bender was a joint effort by the DWP, Mr. Wright, Mr. Paradis and Mr. Landskroner***." *See* Exhibit 5 at p. 144.

40. The *LADWP's Victim Impact Statement* also falsely states, "Paradis wove a false narrative that LADWP's billing system and IT issues could not be resolved without his costly management and then bilked the Department to 'fix' the urgencies and issues he manufactured." *See* Exhibit 1 at p. 2

41. This statement is demonstrably false for several reasons. First, I did not "manufacture" any "urgencies and issues" concerning the LADWP's billing system, IT networks or cybersecurity issues. The "urgencies and issues" involving each of these three areas at the LADWP existed long before my arrival.

42. The existence of the "urgencies" that LADWP now falsely claims I "manufactured" was expressly recognized in an October 24, 2018 email authored by former LADWP Chief Information Security Officer Stephen Kwok. Mr. Kwok's email, which was sent to a senior member of the Water Division's cybersecurity team, states in relevant part, "***For your information, the consultant's (Paul's team), that are being brought in to help DWP . . . are to help address urgent and critical needs and work alongside DWP staff***." *See* Exhibit 6. (Emphasis added)

43. Second, as ███████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███.

44. Third, I never wove a "false narrative" or otherwise claimed that the rampant, long-running and pervasive cybersecurity vulnerabilities or billing system flaws that existed at the LADWP could not be resolved without my management, as the LADWP has falsely represented to the Court.

45. On July 22, 2020 – more than 16 months after I had stopped working with the LADWP – Mr. Bender filed the *Declaration and Report of Paul L. Bender, the Independent CC&B System Monitor for the First and Second Quarters of 2020* (the "Bender July 2020 Declaration").

46. I played no role whatsoever and had absolutely no participation in the preparation of the Bender July 2020 Declaration. I only learned of the existence of this document after it had been filed in Judge Berle's court.

47. I respectfully submit the Bender July 2020 Declaration in support of my declaration because a portion of Mr. Bender's testimony demonstrates that the "urgencies and issues" the LADWP has falsely claimed that I "wove" have long existed at the LADWP and are, in fact, very real and are not false notions that I created or "wove."

48. In relevant part, Mr. Bender testified:

> 20. ***Since May 2018 I have consistently informed the Court of my concerns with the establishment of LADWP's IT Project Management Office***, required by the Revised Settlement Agreement to address the deficiencies experienced in 2013 with the initial CC&B implementation and oversee all of LADWP's large-scale IT projects. LADWP took some initial steps to create a new PMO (known as the Corporate Program Management Office, CPMO) with an experienced internal IT manager initially appointed as Interim Deputy Chief Information Technology Officer, IT PMO and Corporate Application. LADWP has informed us that this person has now been permanently appointed into this role. ***I am still not aware of any additional actions taken to properly staff this new office with either internal or external project management resources***.
>
> 21. ***In my Declaration of July 17, 2019, and in every Declaration since then, I have noted my continuing significant concerns with the lack of qualified resources in LADWP's newly formed CPMO and their ability to manage major IT projects, specifically the upgrade of the CC&B system. I continue my very strong recommendation that the LADWP does not attempt to implement any major IT projects, in particular the upgrade of the CCB system, until they acquire qualified project managers resources, either by staffing their Information Technology Project Management Office (CPMO) with qualified resources or with external consulting resources***. This is the only reasonable solution to ensure the successful implementation of all major IT projects and avoid the same implementation issues experienced in 2013 with the implementation of the CC&B system, issues that will impact the customer service levels agreed to in the revised settlement agreement.

*See* Exhibit 7 at ¶¶ 20-21 annexed hereto. (Emphasis added).

-14-

49. To further demonstrate the falsity of the LADWP's statements that I "wove" a "false narrative" and falsely represented that the rampant, long-running and pervasive cybersecurity vulnerabilities or billing system flaws that existed at the LADWP could not be resolved without my management, I am also providing the Court with Exhibits 8-10 hereto.

50. In the March 24, 2023 LADWP Board Approval Letter, pursuant to which LADWP sought approval from the LADWP Board of Commissioners authorizing the expenditure of $17.25 million dollars for proposed Agreement No. 47771, LADWP personnel stated the proposed expenditure is for

> ***professional consulting services to assess, develop, and improve Los Angeles Department of Water and Power's (LADWP) Compliance Program and processes to meet compliance with North American Electric Reliability Corporation (NERC) Reliability Standards (Reliability Standards) and any other federal, state, or local regulations or standards***, including preparation for upcoming federal audits.

*See* Exhibit 8 at 1. (Emphasis added).

51. Further evidence that I did not weave a "false narrative" concerning the LADWP's lack of qualified cybersecurity and compliance personnel is found in this March 24, 2023 LADWP Board Approval Letter in which LADWP personnel admit in relevant part:

> ***[L]ADWP staff does not have the proprietary knowledge, expertise, and experience to perform assessments or expand LADWP's NERC Compliance Program (Compliance Program) to include Western Electricity Coordinating Council's (WECC) evolving compliance framework. . . .***

*Id*. at 2. (Emphasis added).

52. Further evidence that I did not weave a "false narrative" concerning the LADWP's lack of qualified cybersecurity and compliance personnel is also found in the LADWP's April 21, 2020 Board Meeting Minutes. *See* Exhibit 9 hereto.

53. These meeting minutes confirm that, on April 21, 2020, the LADWP Board of Commissioners, including ***Mr. Levine and Ms. McClain-Hill, voted to approve Item 25, which involved Agreement Nos. 47599A, 47599C-H in the amount of $82.5 million dollars "for cybersecurity consulting services with Deloitte & Touche LLP; Guidehouse, Inc.***" and numerous other cyber security consulting firms "for a term of five years." *See* Exhibit 9 hereto. (Emphasis added). The $82.5 million in cyber security consulting contracts awarded by Commissioners Levine and McClain-Hill during that Board meeting is 2.75 times the amount of the $30 million Aventador contract and demonstrates that Levine, McClain-Hill and others at the LADWP were well aware of the drastic need for cyber security consulting services at the LADWP. *Id*. at 2.

54. Finally, additional evidence that I did not weave a "false narrative" concerning the LADWP's lack of qualified IT personnel is found in the LADWP's March 10, 2020 Board Meeting Minutes. *See* Exhibit 10 hereto.

55. These meeting minutes confirm that, on March 10, 2020, the LADWP Board of Commissioners, including Mr. Levine and Ms. McClain-Hill, voted to approve Item 12, which involved Agreement Nos. 47570A-D and 47570F-K in the amount of $75 million dollars "***for Enterprise Technology Advisory Services with Accenture LLP, Bridgewater Consulting Group, Inc.***" and numerous other IT consulting firms "for a term of five years." See Exhibit 10. (Emphasis added). The $75 million in IT consulting contracts awarded by Commissioners Levine and McClain-Hill during this Board meeting is 2.5 times the amount of the $30 million Aventador contract and demonstrates that Levine, McClain-Hill and others at the LADWP were well aware of the drastic need for IT consulting services at the LADWP. *Id*. at 2.

56. Stated another way, the fact that the LADWP Board of Commissioners, including Commissioners Levine and McClain-Hill, voted to approve and award $157.5 million in cybersecurity and IT consulting contracts just seven months after terminating the Aventador and Ardent consulting contracts clearly demonstrates the falsity of the LADWP's statement that, "Paradis wove a false narrative that LADWP's billing system and IT issues could not be resolved without his costly management and then bilked the Department to 'fix' the urgencies and issues he manufactured."

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct this 23nd day of June, 2023.

_____

Paul O. Paradis